Attorney #6209658                                                    21405/DVO

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

BENITO FLORES DELGADO, Individually  )
and as Special Administrator of the Estate of  )
JUAN FLORES, Deceased  )
  )
  )
                    Plaintiff,  )
  ) Case No.  18 CV 06378
v.  )
  )
CITY OF CHICAGO; a Municipal  )
Corporation, Chicago Police Officer  )
CLARENCE MCCOY; Chicago Police  )
Officer CHARLES O'CONNOR; Chicago  )
Police Officer RICHARD VITELLARO,  )
Chicago Police Officer JESSE OEINCK  )
  )
                  Defendants.  )

## SECOND AMENDED COMPLAINT AT LAW

NOW COMES, BENITO FLORES DELGADO, as Special Administrator of the Estate

of JUAN FLORES, Deceased, by and through his attorneys, O'CONNOR & NAKOS, LTD., and

complaining of the Defendants, CITY OF CHICAGO, a Municipal Corporation, Chicago Police

Officer CLARENCE MCCOY; Chicago Police Officer CHARLES O'CONNOR; Chicago

Police Officer RICHARD VITELLARO, Chicago Police Officer JESSE OEINCK and each of

them, states as follows:

### INTRODUCTION

1.      This is an action for civil damages brought pursuant to 42 U.S.C. Sec. 1983 for

the deprivation of Plaintiff's decedent's constitutional rights.

1

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1343, and 1367.

3.      Venue is proper under 28 U.S.C. §1391(b). All parties reside in this judicial district and the events giving rise to the claims asserted in this complaint occurred within this district.

## PARTIES

4.      Plaintiff's Decedent, JUAN FLORES, was an individual in the United States. He is represented in this action by BENITO FLORES DELGADO, his adult father and the Special Administrator of the Estate of JUAN FLORES, on behalf of Benito Flores Delgado, individually and on behalf of Eva Cervantes his mother, Rocio Maria Flores, his minor sister, Graciela Flores, his minor sister, Edward Flores, his minor brother and Edwin Flores, his minor brother. BENITO FLORES DELGADO is the duly appointed Special Administrator of Plaintiff's Estate.

5.      Defendants, Chicago Police Officer CLARENCE MCCOY ("MCCOY"), Chicago Police Officer CHARLES O'CONNOR ("O'CONNOR"), Chicago Police Officer JESSE OEINCK ("OEINCK") and Chicago Police Officer, RICHARD VITELLARO ('VITELLARO"), were at all times material hereto, duly appointed Chicago Police Officers employed by the CITY OF CHICAGO acting in the capacity of sworn law enforcement officials.

6.      Defendant, the CITY OF CHICAGO (the "CITY") is, and at all times material hereto was a municipal corporation duly organized and existing under the laws of the State of Illinois, located in Cook County, Illinois.

## FACTUAL SUMMARY

7.      On September 10, 2017, JUAN FLORES called 911 for help because the father of his girlfriend had a gun and had punched JUAN FLORES in the face.

2

8.    Officers MCCOY and O'CONNOR arrived in uniform in a marked Chicago Police vehicle at or about 928 N. Kedvale Avenue, Chicago, Illinois 60651 in response to the 911 call.

9.    JUAN FLORES was seated in his vehicle in the street when Officers MCCOY and O'CONNOR arrived.

10.   JUAN FLORES' keys had been taken from him by someone at the 928 N. Kedvale address, so he did not have keys for his vehicle in his possession when the police arrived.

11.   Officer O'CONNOR went inside the residence to look for JUAN FLORES' keys.

12.   Officer MCCOY directed and required JUAN FLORES and others to go with Officer MCCOY into the yard to look for JUAN FLORES' car keys.

13.   While looking for the car keys, the father of the girlfriend of JUAN FLORES told Officer MCCOY that JUAN FLORES was drunk. The father of the girlfriend of JUAN FLORES also told Officer MCCORY that JUAN FLORES should not be allowed to drive and that he would report Officer MCCOY unless he took action.

14.   MCCOY spoke to JUAN FLORES' father, BENITO FLORES DELGADO on the telephone and Officer MCCOY told BENITO FLORES DELGADO that JUAN FLORES was drunk and that he should not drive.

15.   MCCOY admitted that BENITO FLORES DELGADO told MCCOY that he was on his way there to get JUAN FLORES.

3

16. Officer MCCOY was informed and/or made aware that Plaintiff's decedent was underage for consuming alcohol and was intoxicated by alcohol.

17. The keys were found and brought to Officer MCCOY.

18. MCCOY is told that the car keys were found in FLORES' car.

19. MCCOY instructed that the keys be put on the ground.

20. MCCOY could have reasonably retained JUAN FLORES' car keys to prevent him from driving, but instead MCCOY instructed and directed JUAN FLORES, who MCCOY had admittedly been aware that JUAN FLORES was intoxicated, to pick up the car keys.

21. MCCOY then escorted JUAN FLORES out to the street and car where MCCOY watched while JUAN FLORES got into the vehicle and drove away with no headlights on in darkness, reasonably believing that FLORES was underage and intoxicated.

22. MCCOY allowed and permitted JUAN FLORES to enter his vehicle, start the vehicle, and pull away in the vehicle even though MCCOY was operating under the assumption that JUAN FLORES was intoxicated and underage.

23. MCCOY could have stopped JUAN FLORES from leaving until JUAN FLORES' father, BENITO FLORES DELGADO, arrived so BENITO FLORES DELGADO could drive JUAN FLORES home.

24. MCCOY could have detained JUAN FLORES to prevent him from leaving.

25. MCCOY could have arrested JUAN FLORES to prevent him from leaving.

26. MCCOY and his partner O'CONNOR, knowing that JUAN FLORES wanted to go home, was nonviolent, did not have a weapon, was upset, underage and intoxicated, did not

4

notify any other officer over the radio that they had just allowed and permitted an intoxicated, fearful teenager to pick-up his car keys, and drive away with MCCOY watching.

27.     MCCOY and O'CONNOR knew that letting JUAN FLORES drive would be dangerous to himself and the public, and that giving JUAN FLORES information to dispatch to notify other officers would reduce that danger.

28.     MCCOY and O'CONNOR were caught on audio and video having a discussion between themselves indicating that they should not have escorted JUAN FLORES to his car and allow JUAN FLORES to drive off.

29.     JUAN FLORES deserved MCCOY and O'CONNOR'S best skill and attention, which required them to prevent JUAN FLORES from leaving and drive while intoxicated.

30.     JUAN FLORES deserved MCCOY and O'CONNOR'S best skill and attention, which required them to inform other officers about the potential danger JUAN FLORES posed to himself and the public.

31.     JUAN FLORES deserved MCCOY and O'CONNOR'S best skill and attention but did not receive it.

32.     The preceding events discussed in the paragraphs above were willful and wanton and proximately lead to the injury and death of JUAN FLORES and were caught on audio and video through MCCOY's body camera.

33.     After FLORES drove off in his vehicle, Plaintiff's vehicle was seen driving with no headlights by Officers VITELLARO and JESSE OEINCK.

5

34.    Officers VITELLARO and JESSE OEINCK could have known that Plaintiff was intoxicated, underage, upset, nonviolent and probably heading home if Officers MCCOY and O'CONNOR had put that information over the radio.

35.    If Officers VITELLARO and JESSE OEINCK heard over the radio that Plaintiff was intoxicated, underage, upset, nonviolent and probably heading home they would have likely handled their subsequent interaction differently.

36.    VITELLARO and OEINCK, by not turning on their blue lights and sirens as they followed Plaintiff to his home, never indicated that they were they were police officers or interested in initiating a stop.

37.    Officers VITELLARO and OEINCK followed JUAN FLORES into a dead-end lot next to JUAN FLORES' house.

38.    VITELLARO and OEINCK did not pull all the way behind JUAN FLORES thereby failing to seal off the only exit from the lot with their vehicle, had they done so FLORES would have been unable to exit the lot.

39.    VITELLARO and OEINCK both step out of the patrol car.

40.    VITELLARO and OEINCK never announce or identified themselves as police officers.

41.    OEINCK was out of the patrol car, standing by his door when he saw the light indicators on JUAN FLORES car move from brake lights to reverse lights.

42.    OEINCK hesitated as he recognized the potential that JUAN FLORES could potentially try and reverse.

43.     Without reason, being in full control of his own movements, and of his own free will, OEINCK willfully proceeded to place himself in the path of JUAN FLORES' moving vehicle.

44.     The only reason that FLORES' vehicle was able to contact OEINCK was because OEINCK willfully placed himself in that position.

45.     As Plaintiff backed out of the lot, Officer OEINCK, without justification, shot into the car driven by JUAN FLORES hitting JUAN FLORES multiple times, killing him.

46.     Video of the above, including the shooting were also captured on video tape from at least the dash board camera in the car occupied by Officers VITELLARO AND OEINCK.

47.     JUAN FLORES did not have a gun.  Juan Flores' sister witnessed the shooting from her window immediately next door to the vacant lot.

48.     Officer OEINCK violated his duty and training by placing himself in the path of a moving vehicle and failing to move out of the path of the moving vehicle before firing at and into the moving vehicle when the moving vehicle was the only purported threat to the officer or others.

49.     The CITY, through the Chicago Police Department, and COPA, and pursuant to various Chicago Police Department policies and procedures, conducted a purported investigation of the shooting of JUAN FLORES.

### COUNT I
### (42 U.S.C § 1983 – against Officers VITELLARO and OEINCK)

50.     Each of the preceding paragraphs is incorporated as if fully restated here.

51.     Defendants OFFICERS MCCOY and O'CONNOR had a duty not to deprive FLORES of his constitutional rights.

52.     The acts of the Defendants OFFICERS MCCOY and O'CONNOR, were a deliberate, willful and wanton deprivation of Plaintiff's Decedent, JUAN FLORES' Constitutional rights as guaranteed to the Plaintiff's Decedent by the Fourth Amendment to the Constitution and made applicable to the states by the Fourteenth Amendment.

53.     The acts of Officers MCCOY and O'CONNOR were a deliberate, willful and wanton deprivation of Plaintiff's Decedent, JUAN FLORES' Constitutional rights.

54.     Defendant OFFICERS' conduct was objectively unreasonable under the totality of the circumstances.

55.     As a result of Defendant OFFICERS' acts or omissions, decedent experienced pain, suffering, and the loss of his life.

WHEREFORE, Plaintiff, BENITO FLORES DELGADO, an Special Administrator of the Estate of JUAN FLORES, Deceased, asks judgment against Defendants, MCCOY and O'CONNOR and for an award of compensatory damages in a sum sufficient to compensate the Plaintiff for the death of JUAN FLORES; for an award of punitive damages in an amount sufficient to deter future misconduct; together with an award of reasonable attorney's fees and the cost of this action.

## COUNT II
## (STATE COMMON LAW)

56.     Each of the preceding paragraphs is incorporated as if fully restated here.

57.     At all relevant times, Defendant OFFICERS owed decedent JUAN FLORES a duty to refrain from wanton and willful acts and/or omissions, which could cause him harm.

58.     As described above, Defendant OFFICERS MCCOY and O'CONNOR, were a deliberate, willful and wanton in their failure to protect and serve, or otherwise enforce the law to the detriment of Plaintiff's Decedent, JUAN FLORES'.

59.     Defendant OFFICERS breached their duty to decedent JUAN FLORES in the manner described above and their actions were undertaken intentionally, willfully and wantonly, and were the proximate cause of Decedent's death.

WHEREFORE, Plaintiff, BENITO FLORES DELGADO, an Special Administrator of the Estate of JUAN FLORES, Deceased, asks judgment against Defendants, MCCOY and O'CONNOR and for an award of compensatory damages in a sum sufficient to compensate the Plaintiff for the pain, suffering, and death of JUAN FLORES; for an award of punitive damages in an amount sufficient to deter future misconduct; together with an award of reasonable attorney's fees and the cost of this action.

### COUNT III
### (42.S.C § 1983 – Fourth Amendment Excessive Force)

60.     Each of the preceding paragraphs is incorporated as if fully restated here.

61.     Defendant OFFICERS OEINCK and VITELLARO had a duty to not exert excessive force on FLORES.

62.     As described above, one or more of the Defendant OFFICERS OEINCK and VITELLARO subjected Decedent FLORES to excessive force in violation of the Fourth Amendment to the United States' Constitution.

63.     Defendant OFFICERS' conduct was objectively unreasonable under the totality of the circumstances.

64.     As a result of Defendant OFFICERS' acts or omissions, decedent experienced pain, suffering, the loss of his life, and his estate has incurred medical and funeral expenses.

WHEREFORE, Plaintiff, BENITO FLORES DELGADO, an Special Administrator of the Estate of JUAN FLORES, Deceased, asks judgment against Defendants, OEINCK and VITELLARO and for an award of compensatory damages in a sum sufficient to compensate the Plaintiff for the pain, suffering, and death of JUAN FLORES; for an award of punitive damages in an amount sufficient to deter future misconduct; together with an award of reasonable attorney's fees and the cost of this action.

## COUNT IV
## (STATE COMMON LAW)

65.     Each of the preceding paragraphs is incorporated as if fully restated here.

66.     At all relevant times, Defendant OFFICERS OEINCK and VITELLARO owed decedent JUAN FLORES a duty to refrain from wanton and willful acts and/or omissions, which could cause him harm.

67.     As described above, Defendant OFFICERS MCCOY and O'CONNOR, were a deliberate, willful and wanton in their failure to protect and serve, or otherwise enforce the law to the detriment of Plaintiff's Decedent, JUAN FLORES'.

68.     Defendant OFFICERS breached their duty to decedent JUAN FLORES in the manner described above and their actions were undertaken intentionally, willfully and wantonly, and were the proximate cause of Decedent's death.

WHEREFORE, Plaintiff, BENITO FLORES DELGADO, an Special Administrator of the Estate of JUAN FLORES, Deceased, asks judgment against Defendants, MCCOY and O'CONNOR and for an award of compensatory damages in a sum sufficient to compensate the Plaintiff for the death of JUAN FLORES; for an award of punitive damages in an amount.

## COUNT V
### (Wrongful Death)

69.     That on September 10, 2017 and for some time prior thereto, there was in full

force and effect in the State of Illinois a certain Act, commonly known as the Wrongful Death

Act, 740 ILCS 180/1-2, inclusive, which provided in pertinent part as follows:

> Whenever the death of a person shall be caused by wrongful act, neglect or
> default, and the act, neglect or default is such as would, if death had ensued,
> have entitled the party injured to maintain an action and recover damages in
> respect thereof, then and in every such case the person who or company or
> corporation which would have been liable if death had not ensued, shall be
> liable to an action for damages, notwithstanding the death of the person injured
> and although the death shall have been caused under such circumstances as
> amount in law to felon.  (740 ILCS 180/1)

> Every such action shall be brought by and in the names of the personal
> representatives of such deceased person, and, except as otherwise hereinafter
> provided, the amount recovered in every such action shall be for the exclusive
> benefit of the surviving spouse and next of kin of such deceased person and in
> every such action the jury may give such damages as they shall deem a fair and
> just compensation with reference to the pecuniary injuries resulting from such
> death, to the surviving spouse and next of kin of such deceased person.  (740
> ILCS 180/2)

70.     At all relevant times, Defendant OFFICERS owed decedent JUAN FLORES a duty

to refrain from wanton and willful acts and/or omissions, which could cause him harm.

71.     Defendant OFFICERS breached their duty to decedent JUAN FLORES in the

manner described above and their actions were undertaken intentionally, willfully and wantonly,

and were the proximate cause of Decedent's death.

72.     That BENITO FLORES DELGADO, the father of JUAN FLORES, has been

appointed Special Administrator of the Estate of JUAN FLORES on behalf of himself, Eva

Cervantes, his mother, Rocio Maria Flores, his minor sister, Graciela Flores, his minor sister,

Edward Flores, his minor brother and Edwin Flores, his minor brother for the purpose of

prosecuting this action.

11

73.     That JUAN FLORES, deceased, left surviving him, his father BENITO FLORES DELGADO, Eva Cervantes, his mother, Rocio Maria Flores, his minor sister, Graciela Flores, his minor sister, Edward Flores, his minor brother and Edwin Flores, his minor brother who as a consequence of said acts or omissions of the Defendants, suffered pecuniary injuries including but not limited to society, companionship, felicity, guidance, attention, advice, training, instruction.

WHEREFORE, the Plaintiff, BENITO FLORES DELGADO, as Special Administrator of the Estate of JUAN FLORES, Deceased, demands judgment be entered against Defendants, OEINCK, VITELLARO, MCCOY, O'CONNOR and the CITY, for an award of Loss of Society and punitive damages in an amount sufficient to deter future misconduct in a dollar amount sufficient to compensate the Plaintiff's together with the costs of this suit.

### COUNT VI
### (Violation of Rights Under Illinois Law Against Defendant CITY)

74.     Plaintiff repeats and re-alleges all paragraphs above as if fully set forth herein.

75.     By the actions described above, Defendant CITY, is liable in tort individually and for Defendant Officers acts or omissions in the execution or enforcement of law because such act or omission constitutes willful and wanton conduct.

76.     Defendant CITY failed to screen, train, and supervise CPD officers, inadequately monitor CPD officers and their use of force against civilians, specifically officers involved shootings of civilians, failed to sufficiently discipline CPD officers who engage in practices that are in violation of the law.

77.     Through CPD's widespread use of excessive force against Chicago civilians, the City have acted recklessly in implementing, allowing, and acquiescing to the existing practices.

78.     Though being fully aware that the work of a police officer demands extensive training regarding the general order prohibiting the firing into vehicles and officer induced

12

jeopardy, the CITY failed to properly train police officers regarding the legal and factual bases involved in these orders.

79.    Though being fully aware that the work of a police officer demands extensive training regarding the general order on use of force, Defendant CITY failed to properly train police officers regarding the legal and factual basis for using deadly force.

80.    The city has not only failed to provide adequate training in light of foreseeable consequences, but also failed to act in response to repeated complaints of violations by its officers. This conduct amounts utter indifference and willful and wanton misconduct.

81.    As a result of Defendant CITY'S acts or omissions, decedent experienced pain and suffering, emotional distress, and the loss of his life.

WHEREFORE, Plaintiff, BENITO FLORES DELGADO, as Special Administrator of the Estate of JUAN FLORES, Deceased, asks judgment against the CITY and for an award of compensatory damages in a sum sufficient to compensate the Plaintiff for the death of JUAN FLORES; together with an award of reasonable attorneys' fees and the cost of this action, and such other equitable relief as this Honorable Court deems necessary and just.

## COUNT VII
### (State Law Indemnification Against Defendant City)

82.    Plaintiff repeats and re-alleges all paragraphs above as if fully set for herein.

83.    In Illinois, public entities are directed to pay any tort judgements for compensatory damages for which employees are liable for conduct committed within the scope of their employment activities. 735 ILCS 10/9-102.

84.    The Defendants, OEINCK, VITELLARO, MCCOY and O'CONNOR, were employees of the CITY and, at all times relevant hereto, were acting within the scope of his employment as sworn police officer when he committed the misconduct described herein.

85.     Defendant CITY is hereby liable for any sum awarded to plaintiff for compensatory damages, fees and costs, for misconduct alleged herein.

WHEREFORE, the Plaintiff, BENITO FLORES DELGADO, as Special Administrator of the Estate of JUAN FLORES, Deceased, demands judgment be entered against Defendant the CITY, in a dollar amount awared to Plaintiff for compensatory damages, pursuant to its statutory obligation to indemnify Defendants OEINCK, VITELLARO, MCCOY and O'CONNOR.

### COUNT VIII
### (42.S.C § 1983- MONELL CLAIMS AGAINTS CITY )

86.     Plaintiff repeats and re-alleges all paragraphs above as if fully set for herein.

87.     The Chicago Police Department (the "Department") is a subsidiary division of Defendant, the CITY OF CHICAGO.  The CITY maintains and exercises exclusive control over the Department, its policies and procedures, as well as the conduct of all its employees, including Defendants, OEINCK, VITELLARO, MCCOY and O'CONNOR, and their supervisors.

88.     The Defendant, CITY, through its subsidiary the Chicago Police Department, has established certain policies and procedures which were adopted and promulgated through the actions and inactions of senior and intermediate supervising officers of the Chicago Police Department, and were thereby ratified by the CITY.

89.     The municipal policy-makers of the City of Chicago acted with deliberate indifference in maintaining, overlooking and preserving the unconstitutional practices, policies and customs. By their inaction and failure to correct the above-described practices, policies and customs, municipal policy-makers tacitly approve and thus indirectly authorize the type of misconduct Plaintiff complains of herein.

90.     At the time of this occurrence and prior thereto, there existed within the Chicago Police Department policies and procedures which result in the failure or refusal of the Chicago Police Department to properly and legitimately investigate the use of deadly force by sworn Chicago Police Officers against civilian citizens of Chicago.

91.     The City of Chicago and Chicago Police Department's pattern and practice of failing ore refusing to properly and legitimately investigate the use of deadly force by sworn Chicago Police Officers against civilian citizens of Chicago is often referred to as the code of silence.

92.     Rahm Emmanuel, the Mayor of Chicago at the time JUAN FLORES was killed, acknowledged the Chicago Police Department's code of silence.

93.     The former Mayor has previously acknowledged the existence of the code of silence in the context of other police shootings found to be unjustified.

94.     The failure or refusal of the Chicago Police Department to properly and legitimately investigate the use of deadly force by sworn Chicago Police Officers, and the resulting failure of the Chicago Police Department to properly discipline its officers for the illegal use of excessive force, is the proximate cause of frequent injuries to and the death of civilian citizens, including Plaintiff's Decedent, JUAN FLORES.

95.     At the time of this occurrence and prior thereto, the CITY, through the Chicago Police Department, utilized the Detective Division to ostensibly investigate incidents in which Chicago Police Officers, including fellow members of the Detective Division, use deadly force resulting in death or great bodily injury to civilian citizens.  The investigation by Chicago Police Detectives and other Police personnel of the use of deadly force by other Chicago Police Officers,

including members of the Detective Division, creates a transparent conflict of interest which improperly influences the investigative process and the decisions that flow therefrom.

96.     The City of Chicago has encouraged its police department to protect its police officers from any accountability. The City has allowed and encouraged a practice whereby Chicago police Detectives are allowed to conduct their interviews of witnesses and accused officers before any investigator from the Police Review Authority (IPRA) is allowed to do so. During their investigations into officer-involved deaths, the Chicago Police Detectives who are assigned to investigated these types of cases steer their investigations of civilian deaths in favor of the accused officers by methods such as dismissing witnesses who are unfavorable to the officers involved and then not recording these witnesses' presence on scene; by manipulating, lying to, coercing and/or pressuring witnesses in to changing their testimony to reflect more favorably upon the officers involved; by recording witness statements inaccurately, by counseling or advising the officers involved in what to say to avoid discipline or liability for their actions; by failing to collect or preserve evidence that would not reflect favorably upon the officers involved; and by misleading prosecutors about the evidence to ensure that the police officers are shielded from discipline, liability, and prosecution.

97.     As a part of its policy or custom of failing to properly or legitimately investigate the use of deadly force by Chicago Police Officers, the Department commonly classifies as "justified" the use of deadly force by Chicago Police Officers under facts and circumstances in which a citizen using deadly force under the same circumstances, would have been charged criminally for the very conduct which is deemed "justified" when committed by a Chicago Police Officer.

98.     The code of silence has existed inside the Chicago Police Department for decades and Defendant CITY has long been aware of it but has done almost nothing to address or correct this problem until very recently.

99.     Chicago police officers who observe misconduct by their fellow officers but do not report it are not held accountable for their failure to do so.

100.     Whistleblowers within the Chicago Police Department are not protected or supported by the Chicago Police Department and Defendant CITY. Chicago police officers who report the misconduct of other officers are subjected to unbearable working conditions and are ridiculed and shunned by their fellow officers, thereby discouraging them and other officers from reporting misconduct they observe. Instead of guarding against this treatment of whistleblowers, CPD supervisory staff either participates in it or turns a blind eye to it.

101.     Thus, Chicago police officers who use excessive force on civilians know they can act with impunity, even if their misconduct is witnessed by their fellow officers.

102.     The CITY has also been deliberately indifferent to the Chicago Police Department's failure to properly use, maintain, and monitor Chicago police dashboard video and audio recording equipment. The CITY has failed to supervise its police officers in using this equipment properly, and failed to investigate and discipline instances of officers disabling, destroying, or failing to record save these recordings. Chicago police officers know they can disable the equipment, fail to upload the recordings from their shift, or simply move off camera to commit misconduct, without suffering any discipline or consequences. Thus, as a result of the CITY's deliberate indifference, Chicago police officers who use excessive force are also unconcerned about their misconduct being caught on their police vehicle's recording equipment.

17

103.    A principal facet of the unlawful policies and customs employed by the CITY is the fact that in many, if not all material respects, the Chicago Police Department investigates the use of deadly force differently, and far less stringently, when a Chicago Police Officer is the one using deadly force, then when it investigates the use of deadly force by a civilian citizen.

104.    The manner in which the purported investigation of the use of deadly force by Defendants, OEINCK, and the willful and wanton acts of VITELLARO, MCCOY, and O'CONNOR, that unnecessarily lead to the use of deadly force was conducted, its representatives of the disparity in investigations of the use of deadly force by police officers as compared with investigations of the use of deadly force by citizens. Examples of the disparity in the method and manner of the investigation include the following:

(a)    Despite the fact that Defendants, MCCOY and O'CONNOR had Plaintiff's Decedent who did not have keys to drive and JUAN FLORES was instructed by police to pick up his keys and escorted by police to his car knowing he was afraid and intoxicated and watched JUAN FLORES drive away and that Police Officers MCCOY and O'CONNOR never alerted or notified other police in the area of the type of vehicle or status of JUAN FLORES to de-escalate the situation. Despite the fact that OEINCK and VITELLARO unnecessarily chased JUAN FLORES home and OEINCK shot him when JUAN FLORES had no gun just steps from his home.

(b)    It is believed that the police never presented the evidence and video and audio tapes obtained from their investigation to the States Attorney's Office for an independent evaluation and for consideration of potential criminal charges against Defendants, OEINCK, VITELLARO, MCCOY and O'CONNOR, as is always done in a shooting by a civilian citizen.

105.    According to City of Chicago statistics, since its inception in 2007, the City of Chicago's Independent Police Review Authority (IPRA) has investigated more than 400 police

18

shootings a and found the police officers' conduct during these incidents to be justified in almost every case. Even when IPRA investigators find police officer misconduct, Defendant CITY, through its chosen IPRA supervisors, refused to make findings against Chicago police officers involved in civilian deaths, and have instead ordered IPRA investigators to change their findings and reports to hide police officer misconduct from public scrutiny and oversight.

106.    Even after a jury found has found that a Chicago police officer has used excessive force on a citizen, Defendant CITY did not impose discipline based on the jury's findings. For example, in 2009, a jury found that Officer Jason Van Dyke had used excessive force on a citizen and awarded that citizen $350,000.00 in damages. Officer Van Dyke was not disciplined as a result of the jury's findings and thus, was led to believe that he could commit acts of excessive force with impunity. Five years later, Van Dyke killed Laquan McDonald. The City of Chicago's Police Accountability Task Force has found that "[the Independent Police Review Authority] is badly broken…. Cases go uninvestigated, the agency lacks resources and IPRA's findings raise troubling concerns about whether it is biased in favor of police officers. Up until recently, the agency had been run by former law enforcement, who allowed leadership to reverse findings without creating any record of the changes."

107.    The failure and refusal by the CITY, through the Department, to properly and legitimately investigate the use of deadly force by sworn Chicago Police Officers, signals a tolerance by the CITY of the improper use of deadly force by Chicago Police Officers, and constitutes a deliberate indifference by the CITY to such conduct.

108.    By its policies of non-feasance and deliberate indifference in the aforementioned areas, the CITY, through the Chicago Police Department, let it be known to its supervisors and officers, such as Defendants, OEINCK, VITELLARO, MCCOY and O'CONNOR, that the CITY,

condoned ratified and, by virtue thereof encouraged, the unwarranted and illegal use of deadly force by said officers.

109.     The failure and refusal by the CITY, through the Department, to investigate the use of deadly force by sworn Chicago Police Officers in the same manner and form, and subject to the same standards, as those used by the Department in its investigations of the use of such force by civilian citizens, creates unwarranted and illegal favored treatment for a class of citizens, Chicago Police Officers, as compared with the treatment afforded civilian citizens.

110.     Additionally, the CITY failed to properly screen, train, and supervise CPD officers.

111.     Through CPD's widespread use of excessive force against Chicago civilians, the City have acted recklessly in implementing, allowing, and acquiescing to the existing unconstitutional practices.

112.     Though being fully aware that the work of a police officer demands extensive training regarding the general order prohibiting the firing into vehicles and officer induced jeopardy, the City failed to properly train police officers regarding the legal and factual bases involved in these orders.

113.     Though being fully aware that the work of a police officer demands extensive training regarding the general order on use of force, Defendant City failed to properly train police officers regarding the legal and factual basis for using deadly force.

114.     The city has not only failed to provide adequate training in light of foreseeable consequences but has also failed to act in response to repeated complaints of constitutional violations by its officers. This amounts to deliberate indifference

115.     The acts and omissions of the Defendant, the CITY, through the policies and procedures implemented by the Chicago Police Department, were a deliberate and malicious

20

deprivation of JUAN FLORES' Constitutional rights as guaranteed to the Plaintiff's Decedent by the Fourth Amendment to the Constitution and made applicable to the states by the Fourteenth Amendment.

116.    As a direct and proximate cause of the wrongful acts of Defendant, CITY, JUAN FLORES, suffered great bodily injury, which resulted in his death.

WHEREFORE, Plaintiff, BENITO FLORES DELGADO, as Special Administrator of the Estate of JUAN FLORES, Deceased, asks judgment against the CITY and for an award of compensatory damages in a sum sufficient to compensate the Plaintiff for the death of JUAN FLORES; together with an award of reasonable attorneys' fees and the cost of this action, and such other equitable relief as this Honorable Court deems necessary and just.

Respectfully submitted,

_____
One of Plaintiff's Attorneys

DANIEL V. O'CONNOR
**O'CONNOR & NAKOS, LTD.**
120 N. LaSalle Street, 35th Floor
Chicago, IL  60602
(312) 546-8100
(312) 546-8101 - fax