# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BENITO FLORES DELGADO, individually and as Special Administrator of Plaintiff of Juan Flores, Deceased, | No. 18-cv-06378 |
| Plaintiff, | Judge John F. Kness |
| v. | |
| CITY OF CHICAGO, a Municipal Corporation; Clarence McCoy; Charles O'Connor; Richard Vitellaro; and Jesse Oeinck. | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This case arises from the death of Juan Flores, a minor who was shot and killed by a Chicago police officer after Flores backed his vehicle into the officer following a disturbance. Plaintiff Benito Flores Delgado, the father of Juan Flores and the Special Administrator of his estate, brings various state and federal law claims against the City of Chicago as well as the four officers who encountered Juan Flores on the night of his death. Plaintiff alleges that the officers are liable for allowing Flores to drive away from the scene of the disturbance despite knowing that he was both underage and intoxicated, and for using excessive force in violation of Flores's civil rights. Plaintiff further alleges that the City of Chicago is liable under the *Monell* doctrine for fostering a culture that tolerated the improper use of deadly force by police officers—a culture that, Plaintiff contends, led to Flores's death at the hand of a Chicago police officer.

For the following reasons, the Court finds that all claims against the individual officers who did not fire at Flores must be dismissed, while certain claims against the officer who fired the fatal shots and the City must be allowed to proceed.

## I. BACKGROUND

The following recitation of facts is drawn from the Second Amended Complaint (Dkt. 55.) At this stage, the Court must accept Plaintiff's allegations as true and draw all inferences in Plaintiff's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). On September 10, 2017, Juan Flores called the police to report that his girlfriend's father had assaulted him. (Dkt. 55 ¶ 7.) Defendants Clarence McCoy and Charles O'Connor, each Chicago Police Department officers, responded to the call. (*Id.* ¶ 8.)

When they arrived at the scene—a residence in the Humboldt Park neighborhood—Officers McCoy and O'Connor found Flores sitting in his car. (*Id.* ¶ 9.) Flores informed the officers that he did not have his keys, so the officers and Flores went looking for them. (*Id.* ¶¶ 10-12.) During that search, Flores' girlfriend's father told McCoy that Flores was drunk and should not be allowed to drive. (*Id.* ¶ 13.) At some point, McCoy also spoke on the telephone with Flores's father, who informed McCoy that he was on his way to collect Flores. (*Id.* ¶ 14.) Eventually someone found the keys, and McCoy ordered Flores to pick them up. (*Id.* ¶¶ 20, 28.) McCoy then watched as Flores got in the car and drove away (it is unclear from the Second Amended Complaint whether Flores did so with McCoy's permission). (*Id.* ¶ 22.)

2

Neither McCoy nor O'Connor pursued Flores or alerted other officers over the radio that Flores was driving while intoxicated. (*Id.* ¶ 34.)

As Flores drove home, Defendants Richard Vitellaro and Jesse Oeinck, also Chicago Police Department officers, spotted Flores driving without headlights. (*Id.* ¶ 33.) Without activating their cruiser's lights or sirens, they followed Flores, who was driving erratically in an apparent attempt to evade the officers. (*Id.* ¶¶ 36-37; Dkt. 61 at 12:58-12:59.) About one minute after the officers began to follow Flores, he pulled into to a dead-end lot near his house. (*Id.*) Officers Vitellaro and Oeinck then exited their vehicle, just as Flores shifted his into reverse. (Dkt. 55 ¶¶ 39, 41.) According to Plaintiff, Officer Oeinck "saw the light indicators on [Flores's] car move from brake lights to reverse lights," yet Officer Oeinck "willfully proceeded to place himself in the path of" Flores's vehicle. (*Id.* ¶¶ 41-43.) Flores's vehicle then struck Officer Oeinck, pinning him against the squad car. (*Id.* ¶¶ 44, 46.) Officer Oeinck fired his service weapon into the vehicle, hitting Flores multiple times and killing him. (*Id.* ¶ 45.)

On September 6, 2018, Plaintiff initiated this action in state court, but Defendants properly removed it to this Court on September 19, 2018. (Dkt. 1.) The Second Amended Complaint (Dkt. 55), which is currently operative complaint, includes eight counts: (1) Officers McCoy and O'Connor illegally seized Flores in violation of the Fourth Amendment and 42 U.S.C. § 1983 (Count I); (2) Officers Vitellaro and Oeinck willfully and wantonly harmed Flores in violation of Illinois law (Count II); (3) Officers Vitellaro and Oeinck illegally seized Flores in violation of the Fourth Amendment and 42 U.S.C. § 1983 (Count III); (4) all Defendants failed to

3

protect and serve Flores under Illinois state law (Count IV); (5) all Defendants are liable for Flores' wrongful death under Illinois law (Count V); (6) the City of Chicago willfully and wantonly harmed Flores in violation of Illinois law (Count VI); (7) the City of Chicago must indemnify the defendant officers for their tort liability (Count VII); (8) the City of Chicago is liable for the officers' constitutional violations under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978) (Count VIII). Defendants jointly moved to dismiss all counts (Dkt. 63.) That motion is now fully briefed. (Dkts. 64, 65.)[1]

## II. STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks*

---

[1] After briefing was complete, Plaintiff filed a "Motion for Leave to Supplement Prior Response to Defendants' Joint Motion to Dismiss." (Dkt. 89.) Plaintiff seeks to add a portion of a deposition transcript to the motion to dismiss record. (*Id.* at 3-6.) Plaintiff claims the cited testimony establishes that Officer Oeinck "did not have justification to use the ultimate and most severe level of force" against Flores. (*Id.* at 6.) Because courts do not consider deposition testimony appended to briefing on a motion to dismiss, Plaintiff's motion is denied. *See McKee v. Brady*, No. 88 C 20035, 1990 WL 304242, at *4 (N.D. Ill. May 14, 1990) (deposition testimony "may not be considered by this Court on a motion to dismiss"). Either way, the denial of Officer Oeinck's motion to dismiss renders the issue moot.

4

*v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although legal conclusions are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 678-79, the Court, in evaluating a motion to dismiss, must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

In addition to the complaint, the Court reviews any exhibits attached to it. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) And "[w]hen an exhibit contradicts the allegations in the complaint, ruling against the non-moving party on a motion to dismiss is consistent with [the Court's] obligation to review all facts in the light most favorable to the non-moving party." *Id*.

### III. DISCUSSION

Defendants contend the Second Amended Complaint should be dismissed because: (1) Officers McCoy, O'Connor, and Vitellaro did not seize Flores (Dkt 63 at 6); (2) Officer Oeinck's use of deadly force was objectively reasonable (*id*.); (3) Plaintiff's *Monell* claim against the City is "too vague and lacking in sufficient

5

details" (*id.* at 13); and (4) Plaintiff's state-law claims against all Defendants are barred by the Illinois Tort Immunity Act, 745 ILCS 10/2-202, *et seq.* (*id.* at 14). The Court will address each argument in turn.

### A. Section 1983 Claims Against Officers McCoy, O'Connor, and Vitellaro

Section 1983 provides a civil cause of action for "deprivation of any rights, privileges, or immunities secured by the Constitution. . . ." 42 U.S.C. § 1983. In their motion to dismiss, Defendants point out that the Second Amended Complaint refers to "constitutional rights" Defendants supposedly violated, but it does not specify which constitutional rights they violated. (*See* Dkt. 63 n.2.) Plaintiff's response brief does not address Defendants' argument or otherwise clarify Plaintiff's theory. It is clear from the factual allegations, however, that Plaintiff's Section 1983 claims could only arise under the Fourth Amendment. *See Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994) (Section 1983 claim regarding police use of force during arrest arise under Fourth Amendment). Accordingly, the Court will assess whether Plaintiff has alleged a Fourth Amendment violation. *Cf. R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 941 (7th Cir. 2020) ("Plaintiffs need only plead facts, not legal theories, in their complaints").

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV. A "seizure" occurs when a person's "freedom of movement is terminated or restrained by intentionally applied physical force or submission to an assertion of authority." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 719 (7th Cir. 2013); *United States v. Griffin*, 652 F.3d 793, 798 (7th Cir. 2011) ("there

6

are two kinds of seizures: those effected through physical force and those effected through a show of authority *and* submission to the assertion of authority").

Plaintiff alleges Officer Vitellaro, who was driving the police vehicle while Officer Oeinck rode in the passenger seat, attempted to stop Flores after noticing that Flores was driving with his headlights off at night. (Dkt. 55 ¶ 33.) That attempt was cut short when Officer Oeinck, not Officer Vitellaro, shot and killed Flores. Courts have repeatedly held that an attempted seizure does not implicate the Fourth Amendment; only an actual seizure does. *United States v. Collins*, 714 F.3d 540, 543 (7th Cir. 2013) ("No seizure occurs until force is applied or the suspect submits to the officer"); *Brendlin v. California*, 551 U.S. 249, 254 (2007) ("there is no seizure without actual submission"); *Griffin*, 652 F.3d at 798 (similar). Plaintiff does not allege Flores ever submitted to Officer Vitellaro's show of authority, or that Officer Vitellaro ever seized Flores by physical force. Plaintiff has therefore failed to state a Fourth Amendment claim against Officer Vitellaro.

As for Officers McCoy and O'Connor, far from alleging they unconstitutionally seized Flores, Plaintiff complains that they improperly decided *not* to seize him. (*See* Dkt. 55 ¶ 20 (Officer McCoy "could have reasonably retained [Flores's] keys to prevent him from driving); *id.* ¶ 22 (Officer McCoy "allowed and permitted [Flores] to enter his vehicle, start the vehicle, and pull away in the vehicle"); *id.* ¶ 23 (Officer McCoy "could have stopped [Flores] from leaving"); *id.* ¶ 24 (Officer McCoy "could have detained" Flores); *id.* ¶ 25 (Officer McCoy "could have arrested" Flores).) No matter

7

the circumstance, citizens does not enjoy a constitutional right to be arrested. Plaintiff's claims against Officers McCoy and O'Connor therefore fail as well.

B. Section 1983 Claim Against Officer Oeinck

There is no question that Officer Oeinck "seized" Flores when he shot and killed him. *Williams v. Indiana State Police Dep't*, 797 F.3d 468, 472 (7th Cir. 2015) (use of deadly force is a Fourth Amendment "seizure"). But Officer Oeinck argues that the Fourth Amendment claim against him should be dismissed because his use of force was "objectively reasonable." (Dkt. 63 at 8 (citing *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018) (use of deadly force is an unconstitutional seizure if it is not objectively reasonable).) Officer Oeinck contends that, if the Court reviews the video attached to the Second Amended Complaint (Dkt. 61), it will find that, under "immense stress, and with only a split second to react, Officer Oeinck responded to the threat with reasonable, appropriate, and justified force, in compliance with the Fourth Amendment." (*Id.* at 10.) Plaintiff responds that the video shows no such thing. Plaintiff believes Officer Oeinck "showed poor judgment" and "violated the tenets of his training" by "put[ting] himself in between the police vehicle and [Flores's] vehicle[.]" (Dkt. 64 at 15.) Officer Oeinck then "used the violation of his training and failure to exercise good police practice as justification to use deadly force. . . ." (*Id.*)

This presents a difficult question regarding the proper use of video evidence at the motion to dismiss phase.[2] At this stage, the Court reviews "the complaint and all

---

[2] Defendants suggest that, if the Court is inclined to deny the motion to dismiss, it should convert the motion into one seeking summary judgment. (Dkt. 63 at 2 (citing *Levenstein v.*

8

exhibits attached to the complaint." *Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). In doing so, the Court accepts the plaintiff's allegations as true and "constru[es] all inferences in the plaintiff's favor." *Id.* at 542. But the Court is "free to consider any facts set forth in the complaint that undermine the plaintiff's claim." *Bogie*, 705 F.3d at 609. This discretion "includes exhibits attached to the complaint" such as "video recordings attached to or referenced in a complaint." *Id.* (cleaned up). Accordingly, when a video attached to or referred to in a complaint "clearly contradicts" the plaintiff's factual allegations, the video controls. *Felton v. City of Chicago*, 827 F.3d 632, 637 (7th Cir. 2016) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)); *see also Bogie*, 705 F.3d at 609 (when an exhibit "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss"); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690–91 (7th Cir. 2012) (similar).

Plaintiff alleges Officer Oeinck's use of force was unreasonable because he "willfully proceeded to place himself in the path of [Flores's] moving vehicle" even though "the moving vehicle was the only purported threat to the officer or others." (Dkt. 55 ¶¶ 43, 48.) The question, then, is whether the video exhibit contradicts these allegations. On one hand, the video shows that, only a moment after the police vehicle stopped a short distance behind Flores's vehicle, Flores shifted his vehicle into reverse

---

*Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).) In turn, Plaintiff dedicates much of his response to evidence in support of his claims. (*See* Dkt. 64 at 3-12.) But Plaintiff's brief is no substitute for a properly-supported Rule 56 record. Accordingly, the Court declines to rely upon this incomplete record by converting Defendants' motion into one for summary judgment. *Cf. EEOC v. U-Haul Int'l, Inc.*, No. 04 C 6162, 2005 WL 8178948, at *1 (N.D. Ill. Aug. 10, 2005).

9

and accelerated at a high rate of speed. (Dkt. 61 at 12:59.) It is arguable, therefore, that Officer Oeinck could not, in that brief span, have had enough time consciously to decide to jump between the police vehicle and Flores's solely to justify his imminent use of deadly force. On the other hand, because Officer Oeinck emerged from the side of the vehicle, and the video recorded only what was happening in front of the vehicle, the video does not show Officer Oeinck's movements before he fired into Flores's car. Because the crux of Plaintiff's claim is that Officer Oeinck acted unreasonably in positioning himself during the incident, and because the video presents an arguably incomplete depiction of the incident, relying solely upon the video to reject the claim against Officer Oeinck would be inconsistent with the standards governing motions to dismiss.

Although further factual development may well establish that Officer Oeinck did not wrongfully place himself in the path of Flores's vehicle—it was, after all, a fast-moving, chaotic, and violent series of events that led to Flores's death—the Court cannot definitively find at this stage that the video "incontrovertibly contradicts" Plaintiff's allegations. *Bogie*, 705 F.3d at 609. When viewed in the light of the Seventh Circuit's caution that "video may not tell the whole story and reasonable people can sometimes draw different conclusions from the same video," *Felton*, 827 F.3d at 637 (quoting *Scott*, 580 U.S. at 378-80), the fact that the video does not capture all of Officer Oeinck's movements compels the Court to find that the claim against Officer Oeinck must survive the motion to dismiss.

C. *Monell* Claim Against The City of Chicago

*Monell* imposes liability against a municipality when a plaintiff shows that a violation of his constitutional rights was caused by: (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority. *Glisson v. Indiana Dep't of Correction*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc) (citing *Monell*, 436 U.S. at 690–91). *Monell* cannot be turned into a form of *respondeat superior* liability. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). To avoid this result, one key "is to distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Id*; *see also Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018) (the Court looks to "the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts probative of a widespread practice or custom."). In addition to alleging a policy or custom, the plaintiff must allege causation, meaning that "the policy or custom was the 'moving force' behind the constitutional violation." *Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835, 840 (N.D. Ill. 2020) (quoting *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007)).

Plaintiff's *Monell* theory is that "there existed within the Chicago Police Department policies and procedures which result in the failure or refusal of the Chicago Police Department to properly and legitimately investigate the use of deadly force by sworn officers against civilian citizens of Chicago." (Dkt. 55 ¶ 90.) Plaintiff alleges this policy "signal[ed] a tolerance by the City of the improper use of deadly

11

force" that "let it be known to its . . . officers" that the City "condoned[,] ratified and, by virtue thereof encouraged, the unwarranted and illegal use of deadly force by said officers." (*Id.* ¶¶ 108-109.)

The City contends that, because the Second Amended Complaint "does not adequately allege the existence of a policy, custom, or practice that caused the constitutional deprivation," the *Monell* claim should be dismissed (Dkt. 63 at 10.) According to the City, Plaintiff's *Monell* theory is insufficiently supported by factual allegations because Plaintiff has not alleged "details such as the number of excessive force complaints filed against the Chicago Police Department, the number of complaints investigated, and the number of complaints the" investigating authority determined had merit. (Dkt. 63 at 13.) The City further contends that Plaintiff has not "identified a single example in which the City failed to 'properly and legitimately investigate the use of deadly force' or any instances in which the City condoned the use of deadly force." (*Id.* (quoting Dkt. 55 at ¶ 90).)

The City, however, understates the content of the Second Amended Complaint, which includes allegations regarding the number of excessive force complaints investigated, the number found to have merit, and examples of the City failing to investigate or otherwise condoning officers' use of deadly force. (*See* Dkt. 55 at ¶ 105 ("According to City of Chicago statistics, since its inception in 2007, the City of Chicago's Independent Police Review Authority (IPRA) has investigated more than 400 police shootings a [*sic*] and found the police officers' conduct during these incidents to be justified in almost every case."); *id.* ("Even when IPRA investigators find police officer misconduct" the City "refused to make findings against Chicago

police officers involved in civilian deaths, and have instead ordered IPRA investigators to change their findings and reports to hide police officer misconduct from public scrutiny and oversight."); *id*. ¶ 106 (citing example of the City's failure to investigate in a particular officer's case); *see also id*. ¶¶ 88-97 (similar).) In addition to these allegations regarding the City's practices, Plaintiff has also pleaded a causal link between these practices and the injury in this case. (*See id*. ¶ 104.) That is all that is required to allege a plausible *Monell* claim.

The City also argues that dismissal is warranted because Plaintiff has not adequately alleged that any of the individual defendant officers violated his constitutional rights. (Dkt. 63 at 1.) But because, as explained above, Plaintiff has stated a plausible constitutional claim against Officer Oeinck, dismissal of the *Monell* on this basis is unwarranted. That said, Defendants are correct that Plaintiff's *Monell* claim will only proceed as far as his claim against Officer Oeinck proceeds. The Seventh Circuit has held "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010). To determine whether municipal liability absent individual liability is consistent, the Court must assess "the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id*. Plaintiff's *Monell* theory is that the City "let it be known to its . . . officers" that the City "condoned[,] ratified and, by virtue thereof encouraged, the unwarranted and illegal use of deadly force by said officers." (Dkt. 55 ¶¶ 108-109.) This encouragement caused Flores's death because, according to Plaintiff, Officer Oeinck knew he could "act with impunity" when violating Flores's

constitutional rights. (*Id.* ¶ 101.) Under this theory, the City's encouragement of unconstitutional behavior could only have caused Flores's death if Officer Oeinck's actions were unconstitutional. Thus, although Plaintiff's *Monell* claim survives the City's motion to dismiss, Plaintiff cannot ultimately prevail on his *Monell* claim unless he prevails against Officer Oeinck. *Cf. Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010) ("a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee").

### D. State Law Claims Against All Defendants

The Second Amended Complaint includes various Illinois state law claims: willful and wanton conduct (Count II); failure to protect and serve (Count IV); wrongful death (Count V); failure to screen and train (Count VI); and indemnification (Count VII). Defendants contend that these claims are barred by Section 4-102 of the Illinois Tort Immunity Act (745 ILCS 10/4-102). (Dkt. 63 at 14-17 (citing *DeSmet v. Cnty. of Rock Island*, 848 N.E.2d 1030, 1042 (Ill. 2006).) Plaintiff did not respond to this argument; accordingly, Plaintiff has effectively conceded the point, and the state-law claims in the Second Amended Complaint are dismissed. *See Jones v. Connors*, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012) ("A party's failure to respond to arguments the opposing party makes in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim") (collecting cases).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. In view of Plaintiff's lack of response in opposition to the motion to

14

dismiss, the state-law claims against all Defendants are dismissed with prejudice. Plaintiff's claims under Section 1983 against Officer Vitellaro (Counts I and III) are dismissed without prejudice. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success"). Any amended complaint seeking to rehabilitate the Section 1983 claims against Officer Vitellaro must be filed within 30 days of the entry of this order. *See Gaye v. Fairman*, No. 94 C 644, 1995 WL 66290, at *3 (N.D. Ill. Feb. 15, 1995). Defendants' motion to dismiss the Section 1983 claim against Officer Oeinck and the *Monell* claim is denied.

SO ORDERED in No. 18-cv-06378.

Date: July 2, 2021

JOHN F. KNESS
United States District Judge