UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BENITO FLORES DELGADO, individually, )
and as Special Administrator of the Estate of )
Juan Flores, Deceased, ) No. 18-cv-6378
)
    Plaintiff, ) Judge Jeffrey I. Cummings
)
v. )
)
CITY OF CHICAGO and Chicago Police )
Officer JESSE OEINCK, )
)
    Defendants. )

**MEMORANDUM OPINION & ORDER**

    This case arises from a September 10, 2017 incident during which Chicago police officer Jesse Oeinck shot and killed Juan Flores after Mr. Flores' SUV suddenly reversed from a stopped position and crushed Officer Oeinck against the police vehicle that he exited seconds before. (*See* Dckt. #1). Plaintiff, the special administrator of the Estate of Juan Flores, bring claims under 42 U.S.C. §1983 against Officer Oeinck for excessive force and a *Monell* claim against the City of Chicago. (Dckt. #55).[1] Defendants separately moved for summary judgment, (Dckt. ##136, 139), and the Court grants their motions for the reasons stated below.

**I. LEGAL STANDARD FOR SUMMARY JUDGMENT**

    Summary judgment is appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine dispute is present

---

[1] The Court dismissed the Estate's state law claims on July 2, 2021. (Dckt. #96). The Court also dismissed Officers Vitellaro, McCoy, and O'Connor as defendants. (*Id.*). The only claims remaining are Counts I and III (excessive force) against Officer Oeinck and Count VIII (*Monell*) against the City.

1

if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment *unless* it is a genuine dispute as to a material fact); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004) (issues of material fact are material if they are outcome determinative).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, all facts and reasonable inferences must be drawn in the light most favorable to the non-moving party. *King v. Hendricks Cnty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020). However, "when video footage clearly contradicts the nonmovant's claims, [courts] may consider that video footage without favoring the nonmovant." *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018) (citing *Scott v. Harris*, 550 U.S. 272, 378–81 (2007)). Ultimately, summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up).

## II. FACTS

The Court draws the factual record from the parties' pleadings; Officer Oeinck's Local Rule 56.1 statement of material facts ("DSOF") (Dckt. #137); Officer Oeinck's accompanying exhibits (Dckt. #137-1 through #137-5); the Estate's Rule 56.1 statement in opposition to DSOF ("DSOF Resp.") (Dckt. #149); the Estate's Rule 56.1 statement of additional facts ("PSAF") (Dckt. #148); the Estate's accompanying exhibits (Dckt. #148-1 through #148-8); and Officer Oeinck's response to PSAF ("PSAF Resp.") (Dckt. #157).[2]

The pertinent facts, construed in the light most favorable to the plaintiff Estate, are as follows. On September 10, 2017, Juan Flores ("Mr. Flores") called 911 following an incident with his girlfriend's father. (DSOF Resp. ¶6). Chicago police officers Clarence McCoy and Charles O'Connor responded to the 911 call in Chicago. (*Id.* ¶7). According to the Estate, Officer McCoy knew that Mr. Flores was intoxicated and underage, but nonetheless allowed him to drive away. (*Id.* ¶8). However, Officers McCoy and O'Connor did not notify any other officer over the radio that they allowed Mr. Flores to drive away. (*Id.* ¶9).

On that same night, defendant police officer Jesse Oeinck ("Oeinck") and his partner, police officer Richard Vitellaro ("Vitellaro") were on patrol in a marked Chicago police vehicle equipped with a spotlight. (*Id.* ¶10); (Dckt. #137-2 at 11).[3] Officer Vitellaro was driving down the street with Officer Oeinck in the passenger seat when they saw Mr. Flores driving an SUV on

---

[2] The City also filed a Local Rule 56.1 statement of material facts ("City SOF") (Dckt. #140) and accompanying exhibits (Dckt. #140-1 through #140-20). In response, the Estate filed a Rule 56.1 statement in opposition to City SOF (Dckt. #152). The Estate did not submit its own Local Rule 56.1(b)(3) statement of additional facts in opposition to the City's motion.

[3] The Estate does not contest this fact but contends that the portion of Officer Vitellaro's testimony cited by Officer Oeinck does not support it. (DSOF Resp. ¶10). The Court is permitted to disregard any asserted fact that is not supported with a proper citation to evidence in the record, *see* Local Rule 56.1(d)(2); however, the undisputed evidence shows that Officers Vitellaro and Oeinck were in a marked Chicago police vehicle equipped with a spotlight. (*See e.g.*, Dckt. ##137-2 at 11, 137-3 at 1:13:56).

3

the other side of the street facing the opposite direction. (DSOF Resp. ¶¶11–12). Mr. Flores' headlights were off, which is a minor traffic violation. (*Id.* ¶14).

Officer Vitellaro made a U-turn at the intersection of Grand Ave. and Armitage Ave., intending to position the police vehicle behind Mr. Flores' SUV to make a traffic stop. (*Id.* ¶15). After making a U-turn, the officers lost sight of Mr. Flores' SUV but encountered his vehicle again around a minute later and Officer Oeinck activated the police vehicle's spotlight and directed it at Mr. Flores' SUV. (*Id.* ¶¶16–17). During the second encounter, Mr. Flores drove the SUV toward the police vehicle at a high rate of speed before entering an alley. (*Id.* ¶18). Officers Oeinck and Vitellaro pursued Mr. Flores through the alley, then exited the alley and turned right. (*Id.* ¶19).

Mr. Flores turned left into a driveway and came to a stop. (*Id.* ¶21). Officer Vitellaro stopped in the street, roughly perpendicular to Mr. Flores' SUV. (PSAF Resp. ¶18). Officer Oeinck exited the police vehicle, then observed that the lights on the rear of Mr. Flores' vehicle indicated that the vehicle had been shifted into reverse. (*Id.* ¶19).

The in-car camera captured much of what occurred next. Mr. Flores began reversing. (DSOF Resp. ¶22). The SUV initially moved backwards and to the left, then struck the front right corner of the police vehicle, continued to spin to the right, then moved backwards, pinning Officer Oeinck between the police vehicle and the SUV. (*Id.* ¶23).[4]

Officer Oeinck testified that at the initial moment of the impact, he was not in front of the police vehicle, but rather on the right side towards the front of the police vehicle. (*Id.* ¶25). Prior to being struck by Mr. Flores' SUV, Officer Oeinck attempted to jump onto the hood of the

---

[4] The incident was captured by the in-car camera. Although the Estate contends that the footage does not establish this fact, the Court's review confirms that the video footage does, in fact, depict the above sequence of events.

4

police vehicle being operated by Officer Vitellaro. (*Id.* ¶26). Officer Oeinck testified in his deposition that he feared for his life as he was being crushed by Mr. Flores' SUV and pulled down under it. (*Id.* ¶27). While pinned between the two vehicles, Officer Oeinck shot Mr. Flores and killed him. (*Id.* ¶28).

### III. ANALYSIS

Officer Oeinck moves for summary judgment on the grounds that the Estate cannot establish that he subjected Mr. Flores to excessive force because (1) his use of force was objectively reasonable; and (2) he is entitled to qualified immunity. (Dckt. #138). Because neither the Estate's excessive force claim[5] nor its *Monell* claim against the City can survive if Officer Oeinck is entitled to qualified immunity, the Court addresses that argument first.

**A. Officer Oeinck is Entitled to Qualified Immunity**

Officer Oeinck argues he is entitled to qualified immunity from liability on the excessive force claim that the Estate has asserted against him. The doctrine of qualified immunity protects government officials from liability for civil damages in situations in which their conduct does not violate a clearly established statutory or constitutional right. *Gupta v. Melloh*, 19 F.4th 990, 1000 (7th Cir. 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see also Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014). "[O]nce the defense is raised, it becomes the plaintiff's burden to defeat it." *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021). "There are two inquiries in determining whether qualified immunity applies: [1] whether the facts, taken in the

---

[5] Count I of the Estate's second amended complaint is titled "42 U.S.C. § 1983," and simply alleges that Officer Oeinck violated Mr. Flores' constitutional rights, specifically his Fourth Amendment rights. (Dckt. #55 at 7–8). Section 1983 is not itself a claim, but rather authorizes private suits to redress deprivations of constitutional rights by state actors. *See* 42 U.S.C. §1983. Count III of the Estate's second amended complaint is titled "42[ U].S.C. § 1983 – Fourth Amendment Excessive Force." This claim alleges that Officer Oeinck used excessive force against Mr. Flores in violation of the Fourth Amendment. (Dckt. #55 at 9–10). The Court analyzes Counts I and III together as a single excessive force claim against Officer Oeinck.

5

light most favorable to the party asserting the injury show that the officer's conduct violated a constitutional right; and [2] whether the right at issue was 'clearly established' at the time of the officer's alleged misconduct." *Tousis v. Billiot*, 84 F.4th 692, 698 (7th Cir. 2023) (cleaned up). Therefore, the Court begins with an analysis of whether Officer Oeinck's conduct violated Mr. Flores' constitutional rights.

### 1. The Constitutional Right at Issue for Purposes of Qualified Immunity is Excessive Force.

Section 1983 authorizes private suits to redress deprivations of constitutional rights by state actors. *King*, 954 F.3d at 984. "The Fourth Amendment assures the right to be free from unreasonable 'seizures,' a category that includes a law enforcement officer's use of deadly force against a free citizen." *Id.* Since "[a] police officer's use of deadly force on a suspect is a seizure within the meaning of the Fourth Amendment," an unreasonable seizure is a violation of the Fourth Amendment cognizable under §1983. *Doxtator v. O'Brien*, 39 F.4th 852, 860 (7th Cir. 2022) (citing *Ybarra v. City of Chicago*, 946 F.3d 975, 978 (7th Cir. 2020)).

"All claims that law enforcement officers have used excessive force should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id*. (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). This reasonableness standard is an objective one in the sense that it is the facts and circumstances presented to the officer at the time of the conduct at issue, rather than the officer's subjective intent, that matter. *Id.* The analysis of the officers' actions must be "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, [and the Court must] allow for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Weinmann v. McClone*, 787 F.3d 444, 448–49 (7th Cir. 2015) (cleaned up); *Johnson v. Scott*, 576 F.3d 658, 659 (7th Cir. 2009)

6

("the police are entitled to err on the side of caution when faced with an uncertain or threatening situation."). "This is true even when, judged with the benefit of hindsight, the officers may have made some mistakes." *King*, 954 F.3d at 984 (cleaned up).

When evaluating the reasonableness of the use of deadly force, the Seventh Circuit has held that the inquiry focuses on:

> the danger posed by the person to whom the force was applied. This requires asking whether a reasonable officer in the circumstances would have probable cause to believe that the suspect poses an immediate threat to the safety of the officers or others. As a general matter, if the suspect threatens the officer with a weapon, deadly force may be used. And police officers may resort to deadly force even if a less deadly alternative is available to the officers.

*Est. of Biegert by Biegert v. Molitor*, 968 F.3d 693, 699–700 (7th Cir. 2020) (cleaned up); *see Sanzone v. Gray*, 884 F.3d 736, 740 (7th Cir. 2018) (where a suspect threatens the officer with a weapon, deadly force may be used because the risk of serious physical harm to the officer has been shown).

Crucially, "the totality of the circumstances to justify a seizure includes the period just before and during the shooting." *Finkley*, 10 F.4th at 739. The Seventh Circuit's "historical emphasis on the shortness of the legally relevant time period is not accidental [because t]he timeframe is a crucial aspect of excessive forces cases." *Plakas v. Drinski*, 19 F.3d 1143, 1150 (7th Cir. 1994). As the *Plakas* court explained: "[o]ther than random attacks, all [excessive force] cases begin with the decision of a police officer to do something, to help, to arrest, to inquire. If the officer had decided to do nothing, then no force would have been used." *Id.* at 1150. Moreover, even "officers who make errors that lead to a dangerous situation retain the ability to defend themselves." *Gysan v. Francisko*, 965 F.3d 567, 570 (7th Cir. 2020) (citing *Los Angeles v. Mendez*, 581 U.S. 420 (2017)).

7

Therefore, to prevail on its claim of excessive force, the Estate must ultimately show that the force was unreasonable as a matter of law. *See Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003) (explaining that the Court "treat[s] the reasonableness of force as a legal issue, rather than an analog of civil negligence"). Although the Seventh Circuit has "recognized that summary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations," *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010), when the undisputed facts establish reasonableness as a matter of law, the Court must grant summary judgment in favor of the law enforcement party. *See, e.g., Siler v. City of Kenosha*, 957 F.3d 751, 759 (7th Cir. 2020) ("we may consider reasonableness as a matter of law when there are sufficient undisputed material facts to draw a conclusion."); *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (where there are "sufficient undisputed material facts to establish the officer acted reasonably under the circumstances, the court must resolve the issue as a matter of law, rather than allow a jury to 'second-guess' the officer's action") (citation omitted).

> **2. The Estate Has Failed to Produce Sufficient Evidence that Would Permit a Reasonable Jury to Find that Officer Oeinck Used Excessive Force Against Mr. Flores.**

The Court must examine the record to determine whether the Estate has proffered sufficient evidence to permit a rational factfinder to find in its favor. *See Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). In recognition that "the person most likely to rebut the officers' version of events—the one killed—can't testify," the Court will "scrutinize[] the evidence carefully" to ensure fairness to Mr. Flores, whose Estate alleges that Officer Oeinck impermissibly used deadly force. *King*, 954 F.3d at 985 (citing *Maravilla v. United States*, 60 F.3d 1230, 1233–34 (7th Cir. 1995)).

8

Once more, the Court's focus is on the events just before and during the time that Officer Oeinck fired his weapon at Mr. Flores. *Finkley*, 10 F.4th at 739; *Plakas*, 19 F.3d at 1150. The parties offer two competing and inconsistent narratives of what occurred during the relevant time. According to Officer Oeinck, Mr. Flores stopped his SUV in a driveway, at which time Officer Oeinck exited the police vehicle operated by his partner and placed himself on the passenger side of the vehicle. Mr. Flores then quickly reversed his SUV, struck the front of the police vehicle, spun around, and further reversed, thereby trapping Officer Oeinck between the two vehicles. Officer Oeinck tried unsuccessfully to jump onto the hood of the police vehicle but found himself crushed between the two cars and felt that he was being pulled down under Mr. Flores' SUV. While pinned between the two vehicles, Officer Oeinck fired his weapon at Mr. Flores.

The Estate's version of events is starkly different. It asserts that Officer Oeinck "unreasonably decided to place himself" in the path of Mr. Flores' reversing SUV and "made no effort to move out of that path." (Dckt. #147 at 1).

If the Court accepts Officer Oeinck's version of the crucial events, then Officer Oeinck's use of deadly force was constitutionally reasonable. *See e.g.*, *Estate of Starks v. Enyart*, 5 F.3d 230, 234 (7th Cir. 1993) (stating that if the officer was in the path of the accelerating car before it started forward and the fact finder concluded the car could have braked but chose not to, then the defendant officers reasonably responded to the acceleration with deadly force). If a reasonable jury could find that the Estate's version is what occurred, i.e., that Officer Oeinck placed himself in peril, then used the peril he created to justify shooting Mr. Flores, then it is possible that Officer Oeinck was not justified in using deadly force. *See e.g.*, *id.* (stating that if the officer stepped in front of the rapidly moving vehicle, leaving the plaintiff no time to brake, then the

9

officer would have unreasonably created the encounter that ostensibly permitted the use of deadly force).

Although what occurred at the relevant time is certainly material to the disposition of these motions (and the case), the parties' dispute is not "genuine" because no reasonable juror could credit the Estate's version of what happened immediately prior to and during Officer Oeinck's use of lethal force. This is so because the Estate's version is clearly contradicted by Officer Oeinck's testimony regarding his movements *and* the footage from the camera inside the police vehicle.[6]

As stated above, the Court's independent review of the footage from the police vehicle is fully consistent with the above description of Officer Oeinck's actions after Mr. Flores pulled into the driveway. Officer Oeinck was "forced to make [a] split-second judgment[]—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that [wa]s necessary in a particular situation." *Graham*, 490 U.S. at 397; *King*, 954 F.3d at 984; *Plakas*, 19 F.3d at 1149. Courts "give considerable leeway to law enforcement officers' assessments about the appropriate use of force in [such] dangerous situations." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 724–25 (7th Cir. 2013) (internal quotation marks omitted).

In sum: Officer Oeinck's testimony and the in-car camera footage establish that after Mr. Flores entered the driveway, Officer Oeinck emerged from—and stayed to—the side of the police vehicle. He did not step behind the SUV or otherwise position himself in its path as Mr. Flores was reversing. After the SUV hit the front of the police car, it rapidly and unpredictably

---

[6] The Court acknowledges that Officer Oeinck's motion to dismiss was denied because he relied solely on the video evidence and the video evidence did not show his final movements before he fired into Mr. Flores' SUV. (Dckt. #97 at 9–10). On summary judgment, however, Officer Oeinck also relies on his own testimony, which provides that he was to the side of the police vehicle (and not in front of it) at the time Mr. Flores put his SUV in reverse. The video footage does not assist Mr. Flores on summary judgment because it does not contradict Officer Oeinck's testimony on this crucial point.

spun around in a matter of seconds, pinning Officer Oeinck to the right side of the police vehicle. Officer Oeinck did not, as the Estate contends, place himself in peril, then use that peril to justify the use of deadly force. Instead, Officer Oeinck tried (unsuccessfully) to escape from the SUV's path, and only after he was being crushed between the two vehicles did he fire his weapon.

Because the video footage "firmly settles" the factual issue of what occurred in the moments immediately before and during Officer Oeinck's use of force, "there is no genuine dispute" and the Court will not indulge the Estate's version of events. *Horton*, 883 F.3d at 944.

Thus, the question is whether defendants' version of events as captured by the video footage establishes that Officer Oeinck acted reasonably as a matter of law. The Court finds that it does. As the Seventh Circuit has repeatedly held: "[i]f the person of interest threatens the officer with a weapon, deadly force may be used, because the risk of serious physical harm to the officer has been shown." *King*, 954 F.3d at 985; *Siler*, 957 F.3d at 759 (cleaned up) ("there can be no question that deadly force may be used if the officer has probable cause to believe that the armed suspect . . . poses a threat of serious physical harm, either to the officer or to others . . . ."); *Horton*, 883 F.3d at 949. An automobile may be used as a deadly weapon. *Tolliver*, 820 F.3d at 245. And there can be no doubt that a threat of death or great bodily harm to Officer Oeinck existed at the time he fired his weapon given that he was being crushed between two vehicles. Accordingly, the Court finds he acted reasonably as a matter of law.

The Court also rejects the Estate's other arguments as to why it believes that Officer Oeinck's use of force was nonetheless unreasonable. In particular, the Estate asserts that Officer Oeinck's use of force was unreasonable because: (1) Officers Oeinck and Vitellaro failed to identify themselves as police officers; (2) other individuals testified that Officer Oeinck had the

11

option to place himself out of the path of the SUV; and (3) Officer Oeinck violated the Chicago Police Department's ("CPD") General Order regarding moving vehicles. (Dckt. #147 at 8–11).

### a. Police Officers Should Give Some Warning Prior to Using Deadly Force Only "When Feasible."

The Estate contends, relying on *Horton v. Pobjecky*, 883 F.3d 941 (7th Cir. 2018) and *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985), that the failure of Officers Oeinck and Vitellaro to identify themselves as police officers alone makes Officer Oeinck's use of force unreasonable. (Dckt. #147 at 8). The Estate is incorrect. According to *Horton* and *Garner*, a police officer should give "some warning" prior to using deadly force, but only where feasible. *Horton*, 883 F.3d at 949; *Garner*, 471 U.S. at 11–12. In other words, *Garner* and *Horton* do not require, as the Estate asserts, an officer to warn in all circumstances.

Furthermore, no reasonable jury could find that it would have been feasible for either officer to warn Mr. Flores that deadly force was going to be used against him in the circumstances present here, because there is no evidence to show or support a reasonable inference that either officer would have known that force was going to be necessary until the moment Officer Oeinck was trapped between the two vehicles. The Estate argues that the officers should have activated their police lights, used the police microphone, or yelled out that they were officers. (Dckt. #147 at 8). This argument ignores the sequence of events in this case. The in-car video recording of this incident provides no basis to show or support a reasonable inference that Officer Oeinck had any advance warning that Mr. Flores was going to reverse into the police vehicle, spin 180 degrees, and pin him in between the two cars. Moreover, any argument that Officer Oeinck should have warned Mr. Flores before shooting while being pinned between two vehicles ignores the great bodily harm and threat of death Officer Oeinck faced in

that moment. *Horton*, 883 F.3d at 952 (affirming award of summary judgment in officers' favor on plaintiff's excessive force claim where no verbal warning or commands were given).

Given the circumstances presented, no reasonable juror could conclude the defendant officers should have stopped to identify their office or warn Mr. Flores before Officer Oeinck shot him.

### b. The Subjective Beliefs of Others are Irrelevant as to the Determination of Whether Officer Oeinck's Use of Force Was Objectively Reasonable.

The Estate further contends that Officer Oeinck's use of force was unreasonable because Officer Vitellaro, Officer O'Connor (who was not on scene at the time of the incident), and Rosie Flores (Mr. Flores' sister who allegedly observed the incident) testified that Officer Oeinck had the option to place himself outside the path of Mr. Flores' vehicle. (Dckt. #147 at 9–10). The Estate does not cite, and the Court is unaware of, any authority which provides that the subjective beliefs of others are relevant to determining whether the use of force was reasonable under the Fourth Amendment. Moreover, even if Officer Oeinck arguably made a mistake and could have handled the situation better, that does not mean that his actions violated the Fourth Amendment where (as here) his use of force was otherwise objectively reasonable. *See, e.g., City & Cnty. of San Fransisco v. Sheehan*, 575 U.S. 600, 615 (2015) ("Indeed, even if [the officers] misjudged the situation, [plaintiff] cannot establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided."); *Est. of Biegert*, 968 F.3d at 698. This argument is, therefore, also rejected.

### c. The CPD's General Orders are Irrelevant as to Whether Officer Oeinck's Use of Force Was Reasonable Under the Fourth Amendment.

Finally, the Estate contends that Officer Oeinck's use of force was unreasonable because the CPD General Order regarding the use of force instructs officers to "make every effort to

13

move out of the path of a moving vehicle" that is being used as force against the officer. (Dckt. #147 at 11 (citing Dckt. #148-8 at 3)). The Estate cites no authority in support of this argument, and it ignores Seventh Circuit guidance to the contrary. In particular, the Seventh Circuit stated in *Thompson v. City of Chicago* that whether the defendant officer's conduct conformed with the CPD's General Orders pertaining to the appropriate use of force was *irrelevant* to the question of whether the officer's actions were reasonable under the Fourth Amendment. 472 F.3d 444, 454 (7th Cir. 2006). The Seventh Circuit further made it clear that "the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Id.* Thus, evidence that Officer Oeinck purportedly acted contrary to a CPD General Order is irrelevant to whether his actions were reasonable under the Fourth Amendment. *See, e.g., Hinch v. O'Connor*, No. 15 C 9316, 2018 WL 925119, at *6 (N.D.Ill. Feb. 15, 2018) (granting defendant's motion for summary judgment and holding, based on *Thompson*, that any purported violation of a General Order was not relevant to determining whether defendant's use of force was reasonable).

In sum: because the Estate failed to offer evidence to raise a genuine issue of fact as to whether Officer Oeinck's use of lethal force was objectively unreasonable as a matter of law, *Bell*, 321 F.3d at 640, Officer Oeinck is entitled to summary judgment on the excessive force claim alleged against him.

### 3. The Estate has Failed to Establish that Officer Oeinck's Use of Force Violated a Clearly Established Right.

Even if the Estate had presented sufficient evidence to show that Officer Oeinck's use of force was objectively unreasonable (and it has failed to do so), Officer Oeinck would be entitled to qualified immunity on the excessive force claim asserted against him if the Estate cannot show that his conduct violated a clearly established constitutional right such that he was on notice that

his conduct would be clearly unlawful. *Siler*, 957 F.3d at 758 (citing *Saucier v. Katz*, 457 U.S. 194, 201-02 (2001)); *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) (plaintiff bears the burden to show that a right is clearly established). "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Tousis*, 84 F.4th at 698 (cleaned up).

A plaintiff can show that a right is "clearly established" by statute or the Constitution in at least two ways: (1) pointing to an analogous case establishing the right to be free from the conduct at issue; or (2) showing that the conduct was "so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Steidl v. Fermon*, 494 F.3d 623, 632 (7th Cir. 2007). The Estate's burden on this point is rigorous. As the Seventh Circuit has explained:

> [A] right is clearly established for qualified immunity purposes if its contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, existing precedent must have placed the statutory or constitutional question beyond debate. And in order to answer the question beyond debate, the Supreme Court has repeatedly emphasized that the clearly established law must share specific details with the facts of the case at hand. Though to defeat a defendant's assertion of qualified immunity plaintiffs need not produce a case directly on point, defining the applicable law at a high level of generality simply will not do. Only in the rare obvious case will the unlawfulness of the officer's conduct be sufficiently clear without existing precedent . . . addressing similar circumstances. This sounds like a high bar because it is—qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Doxtator*, 39 F.4th at 863 (cleaned up).

The Estate devotes a significant portion of its brief to its argument that *Estate of Starks v. Enyart* stands for the proposition that an officer who deliberately walks into the path of a moving vehicle without leaving the suspect sufficient time to stop the vehicle cannot use the movement of the vehicle as the justification for their decision to use deadly force. (Dckt. #147 at 13).

15

While *Starks* does indeed support this proposition, it does not apply here because the circumstances in that case are factually distinguishable.

In *Starks*, the plaintiff stole a taxicab and drove it to a nearby parking lot. *Starks*, 5 F.3d at 232. Three uniformed officers arrived in two marked police cars and parked both cars behind the cab. *Id.* The officers then surrounded the cab—one officer stood in front of the car but behind a utility pole, one stood behind the car, and one stood next to the driver's door—and confronted Starks. *Id.* Starks refused to comply with the officers' orders to exit his cab. *Id.* After Starks ignored a second order to exit, he put the car in reverse and slowly backed into the police car parked behind him. *Id.* He then drove forward and to the right but was blocked by the utility pole. *Id.* Starks then reversed to the left to improve his position relative to the utility pole, put the car in drive, and floored the accelerator. *Id.* The angle of the cab would have permitted Starks to clear the pole and drive away. *Id.* When Starks started forward the second time, at a high rate of speed, the officer who had been behind the pole (whose name was Black) moved out and jumped into a position in front of the moving cab. *Id.* All three officers fired their weapons at Starks and Starks died as a result of his gunshot wounds. *Id.*

The Seventh Circuit dismissed defendants' appeal of the denial of their motion for summary judgment on the issue of qualified immunity because there was genuine dispute of material fact as to:

> whether Black stepped in front of Starks' rapidly moving cab, leaving Starks no time to brake. If he did, then Officer Black would have unreasonably created the encounter that ostensibly permitted the use of deadly force to protect him, because the decedent would have been unable to react in order to avoid presenting a deadly threat to Black. On the other hand, if Black was in the path of the car before the car started forward or if the factfinder concludes that Starks could have braked but chose not to, then the three defendants reasonably responded to Starks' acceleration toward Black. Starks would have threatened the life of a police officer, and reasonable officers could believe that the use of deadly force was appropriate.

*Id.*, at 234.

Here, the evidentiary record establishes that Officer Oeinck did *not* place himself in the path of Mr. Flores' SUV as it was rapidly moving towards him. To the contrary, even though he was at the side of the police vehicle and not directly behind Mr. Flores' SUV at the time it started to move in reverse, Officer Oeinck found himself in the circuitous path that Mr. Flores unforeseeably drove his SUV. As the above quote from *Starks* illustrates, Officer Oeinck was justified in using deadly force in this scenario.[7] Thus, because the Estate has failed to point to any precedent which is sufficiently "particularized to the facts of this case," *Doxtator*, 39 F.4th at 863, and the Court has otherwise failed to find any case law that would have warned Officer Oeinck that his actions under the circumstances here amounted to excessive force in violation of the Fourth Amendment. Accordingly, the Estate has failed to satisfy the "high bar" required to defeat Officer Oeinck's assertion of qualified immunity and he is entitled to qualified immunity on the excessive force claim asserted against him for this reason as well. *Id.*; *Schimandle v. Dekalb Cnty. Sheriff's Off.*, 114 F.4th 648, 656 (7th Cir. 2024) ("Although the plaintiff need not point to an identical case finding the alleged conduct unlawful, he must point to precedent placing the statutory or constitutional question beyond debate.") (cleaned up).

---

[7] This holding is supported by the Seventh Circuit's decision in *Tousis v. Billiot*, 84 F.4th 692 (7th Cir. 2023). There, the Seventh Circuit found that a Drug Enforcement Administration special agent did not violate clearly established law when he shot and killed a driver following a high-speed chase, and thus was entitled to qualified immunity from liability in an §1983 excessive force action. *Id.* at 699. The agent exited his car to stand before a *stationary* vehicle that was initially blocked in by traffic. *Id.* at 701. The Seventh Circuit held that the plaintiff, not the agent, created the danger when he began to move the car forward toward the officer. *Id.* Similarly, here, the parties agree that Officer Oeinck exited the police vehicle when Mr. Flores' SUV was stationary in the driveway. It was Mr. Flores, not Officer Oeinck, that created the danger when he began to move his SUV in reverse toward the police vehicle—a danger, unlike the danger in *Tousis*, that was ultimate realized when the SUV spun around 180 degrees, pinning Officer Oeinck between the two vehicles.

17

### B. The *Monell* Claim Against the City Fails in the Absence of a Constitutional Violation by Officer Oeinck

The City seeks summary judgment on the Estate's *Monell* claim. A municipality may be liable for a section 1983 violation only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). One scenario that can give rise to municipal liability under section 1983 is "a widespread practice that is so permanent and well-settled that it constitutes a custom or practice . . ." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021).

The Estate alleges that the City had the following widespread practices which were purportedly the moving force behind the conduct at issue here: failure to investigate the use of deadly force; failure to properly screen and supervise; a widespread use of excessive force; and a failure to properly train officers on the legal and factual basis for the use of deadly force. However, a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by the municipal employee (in this case, the police officer). *See, e.g., King*, 496 F.3d at 817. For reasons we have already explained, Officer Oeinck's conduct did not violate the Fourth Amendment. Accordingly, because there is no underlying constitutional violation, the City cannot be liable under *Monell*. *See Sallenger v. City of Springfield*, 630 F.3d 499, 505 (7th Cir. 2010); *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) ("The jury found that Mr. Jenkins' constitutional rights were not violated, thus the City cannot be held liable for any failure to train.") (cleaned up).

## CONCLUSION

Based on the foregoing, the Court concludes that Officer Oeinck's conduct did not amount to a violation of Mr. Flores' constitutional rights. Consequently, the Court grants defendants' motions for summary judgment (Dckt. ##136, 139).

**Date: December 17, 2024**

**Jeffrey I. Cummings**
**United States District Court Judge**